(12 Misc. Rep. 454.)

HIRSHKIND v. PRIVATE COACHMEN'S BENEVOLENT & CHARITABLE ASS'N.

(Common Pleas of New York City and County, General Term. May 6, 1895.)

APPEAL—WEIGHT AND SUFFICIENCY OF EVIDENCE.

A judgment rendered by the court without a jury, and resting solely on the testimony of the winning party, which was contradicted by his own entry in books of account, by his admission to third parties, and by the testimony of two witnesses, one of whom had no connection with the transaction, will be reversed on appeal.

Appeal from Fourth district court.

Action by Philip Hirshkind against the Private Coachmen's Benevolent & Charitable Association for money had and received. From a judgment in favor of plaintiff, rendered by the justice without a jury, defendant appeals. Reversed.

Argued before BISCHOFF and GIEGERICH, JJ.

William J. Fanning, for appellant.

Joseph Steiner, for respondent.

GIEGERICH, J. The defendant is an incorporated society composed of private coachmen. On January 9, 1894, it gave a ball, of which one Patrick B. Lonegan, the plaintiff's assignor, acted as sec-

retary.   His duty, as such, was to keep an account of all the moneys received by members, and delivered to him.   He was also a member of the soliciting committee, the duties of which were to solicit donations to the ball, and turn them over to the officers thereof.   He testified at the trial that the amount of money which he paid over to the defendant was $2,277.55, and that the total amount received by him in its behalf was $2,248.25, making a difference of $29, for which this action is brought.   The item in dispute is one for $50, being a check of Valentine & Co., for that amount, to the order of Brewster & Co., and indorsed by them to the order of the defendant, which received the amount thereof on the following indorsement: "Michael Garvey, Present the Private Coachmen's Benevolent and Charitable Society Michael Garvey present."   Plaintiff's assignor, in the cash book kept by him, charges himself with having received said check from one Thomas Fields, a member of the soliciting committee, who collected in the lower part of the city, which, it seems, the society divided into three parts; and plaintiff's assignor admits that he gave to Fields a receipt for moneys received from him, including the amount of said check, although, on the trial, he denied that he had ever received the same, and he attributes the error in the cash book to the hurried manner in which he made the entries therein.   But we find, upon an inspection of the cash book in question, that, instead of showing haste, great care seems to have been taken in making the entries therein.   Under the heading, "Donations from Lower District," there are 10 entries, legibly and carefully written, which amount, in the aggregate, to the sum of $245, among which is the donation of Valentine & Co. for $50 (the item in controversy), which entries, with the single exception of the one, "B. Altman & Co., $10," have opposite to each a check mark in pencil, thus showing a comparison of the entries with other data. The testimony of the plaintiff's assignor that the check in question never came into his possession is flatly contradicted by the testimony of said Fields, who testified as follows:

"Q. Did you solicit a subscription of the Valentine Varnish Co.? A. Yes, sir.   Q. What do you know as to whether or not that was paid? A. I know it was paid.   Mr. Valentine told me he would send it to the Private Coachmen's Society.   Q. Did Lonegan, the last witness on the stand, say anything to you with regard to it? A. He told me he received it personally, and I gave him credit for it.   Q. Did he give you a receipt for it? A. I asked him, the night in the society's room, did he receive a check, and he says to me: 'There is your receipt.   What more do you want?' He referred to that book.   I asked him about all those little checks, and he said he received them.   I never saw the check."

The plaintiff's assignor was also contradicted by James L. Devine, the ex-president of the society, who testified:

"Q. Did you attend the meeting of the society in May last? A. Yes, sir. Q. Was Lonegan, whom you saw on the stand, at that meeting that night? A. Yes, sir.   Q. Did you hear him say anything about the check from the Valentine Varnish Co.? A. Yes, sir; he said he gave Fields credit for that check.   Fields was on the soliciting committee of that district, and he gave him credit for that check.   Furthermore, there is no member in the society that has power to sign checks.   All these checks come in, and the seal of the society is put on them."

On an appeal from a district court, it is within our province to reverse the judgment, if it is against the weight of the evidence. Schumacher v. Waring, 7 Misc. Rep. 161, 27 N. Y. Supp. 325, and citations. "And in determining the weight it is proper," as was said by Judge Bischoff in the case last cited, "to consider the quality of the evidence, the interest of the witnesses in the issue of the trial, and the compatibility and consistency of their several statements with the truth, as it may appear from attending circumstances." It was incumbent upon the plaintiff to prove the material allegations of the complaint denied by the answer. Siefke v. Siefke, 3 Misc. Rep. 81, 82, 22 N. Y. Supp. 546. The plaintiff's case rests solely upon the testimony of the plaintiff's assignor that he did not receive the Valentine & Co. check, but this, we have seen, is flatly contradicted by his own written entry in the cash book, his admission that he had given a receipt therefor to Fields, and by the testimony of two witnesses, one of whom had no connection whatsoever with the transaction respecting the check in question. These facts, in our opinion, determine the question of probability in defendant's favor, and, tested by the rules above cited, we conclude that the judgment in plaintiff's favor is against the clear weight of the evidence. For these reasons the judgment should be reversed, and a new trial ordered, with costs to the appellant, to abide the event.